**IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| United States of America, *ex rel.* Elio | ) | |
| Montenegro; People of the State of Illinois, | ) | |
| *ex rel.* Elio Montenegro, | ) | Case No.: 1:21-cv-02544 |
| Plaintiffs, | ) | |
| v. | ) | Judge Jeremy C. Daniel |
| | ) | |
| Roseland Community Hospital Association; | ) | JURY TRIAL DEMANDED |
| American Medical Lab; Terrill Applewhite; | ) | |
| and Five Apples Inpatient Specialists LLC, | ) | |
| | ) | |
| Defendants. | ) | |

**DEFENDANTS DR. TERRILL APPLEWHITE & FIVE APPLES
INPATIENT SPECIALISTS LLC'S ANSWER TO PLAINTIFF'S COMPLAINT**

Defendants Dr. Terrell Applewhite and Five Apples Inpatient Specialists LLC, through their attorneys at FORAN GLENNON PALANDECH PONZI & RUDLOFF, PC, Answer Plaintiff's Complaint with the following:

**FIRST DEFENSE**

The Complaint fails to state a claim upon which relief may be granted.

**SECOND DEFENSE**

The Court lacks subject matter jurisdiction over some or all of Plaintiff's claims.

**THIRD DEFENSE**

1.     Plaintiff's Complaint attempts to plead a *qui tam* action under the federal False Claims Act (31 U.S.C. § 3729), the Illinois False Claims Act (740 ILCS 175/3), and the Illinois Insurance Claims Fraud Prevention Act (740 ILCS 91/1, which incorporates 720 ILCS 5/17-10.5, the Insurance fraud provision within the Illinois Criminal Code of 2012).

1

2.      Because Plaintiff's Complaint is based on allegations of fraud, heightened pleading

standards apply under Rule 9(b) of the Federal Rules of Civil Procedure. Plaintiff's Complaint

fails to meet these pleading standards.

Answering the individual allegations of Plaintiff's Complaint, using the same numbering

and formatting as is found in the Complaint, these Defendants state the following:

## I.   NATURE OF THE CASE

1.      This action seeks to recover damages and civil penalties on behalf of the United
States of America and the State of Illinois arising from false statements and claims made or caused
to be made by the Defendants to: (1) the United States and its agents and intermediaries in violation
of the Federal False Claims Act, 31 U.S.C. §§ 3729 *et seq.* (the "FCA"); (2) the State of Illinois
and its agents in violation of the Illinois False Claims Act, 740 ILCS 175/1 *et seq.* (the "IFCA");
and (3) Illinois insurance companies, insured persons and their agents, and intermediaries in
violation of the Illinois Insurance Claims Fraud Prevention Act, 740 ILCS 92/1 *et seq.* (the
"ICFPA").

**ANSWER:   Dr. Terrell Applewhite and Five Apples Inpatient Specialists LLC
admit that this action seeks to recover damages and civil penalties, but deny the conclusory
allegations that they made false statements, false claims, or are otherwise liable for any civil
remedies.**

2.      During the COVID-19 Pandemic, the Defendants provided testing for patients to
determine whether they were positive for the COVID-19 virus. However, as detailed below, rather
than rally to the public health, the defendants took advantage of the global and national health
emergency to profiteer, prescribing and billing for medically unnecessary tests and even for
services that were never actually provided. Defendants did this at the expense of taxpayers and
private insurance companies, aware that Congress had passed legislation requiring absolute
payment for COVID-19 related treatment, including testing. Defendants' conduct is particularly
egregious because it took place at a "Safety Net Hospital" that serves economically disadvantaged
people, many of which are also members of the minority community that has been hit especially
hard by the COVID pandemic. While these disadvantaged patients suffered, the Defendants billed
and were paid millions of dollars for services that were medically unnecessary or were never
provided at all.

**ANSWER:   Dr. Terrell Applewhite and Five Apples Inpatient Specialists LLC
admit that that Dr. Applewhite was designated by Roseland Community Hospital to create
and administrate a COVID testing program for patients during the COVID-19 pandemic.
Dr. Terrell Applewhite and Five Apples Inpatient Specialists LLC deny the remaining
conclusory allegations contained within this paragraph.**

3.     This misconduct began in early March 2020, when the COVID-19 public health crisis first struck the United States and there was a national priority on testing to identify persons with active COVID-19 infections. At that time, Roseland formulated a plan to provide drive thru testing for the virus. Two very different types of testing were then available: diagnostic tests and serology tests. The diagnostic tests include molecular tests, or PCR, tests. These tests are usually performed via a nasal swab and are used by health professionals to detect and determine active infection with the virus that causes COVID-19. On the other hand, the serology test is a blood test used to detect the presence of antibodies, which can indicate whether the patient previously had COVID-19. Serology tests are not used to detect the active presence of the COVID-19 infection.

**ANSWER:     Dr. Terrell Applewhite and Five Apples Inpatient Specialists LLC deny these allegations to the extent that they are criticisms directed at these Defendants. To the extent that these allegations are directed at Roseland Community Hospital, these Defendants make no answer to the allegations contained in this paragraph because they are not directed at them. To the extent that a response is deemed required, these Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations contained in this paragraph, and therefore neither admit nor deny the allegations—but demand strict proof thereof. As to the conclusory statements regarding the medical utility of PCR vs. Antibody testing, Dr. Terrell Applewhite and Five Apples Inpatient Specialists LLC deny those statements.**

4.     Rather than make an individual medical determination as to the type of testing that was medically appropriate for each patient, and without sharing information about the different purposes for the tests, Roseland encouraged patients who wanted to be tested for active COVID-19 infection to receive both PCR and serology tests. Roseland used different tactics to do this, including by telling patients that the results of the serology test would be provided much more quickly than the PCR test _without_ also telling them that the test was medically unnecessary and could not detect an active COVID-19 infection.

**ANSWER:     Dr. Terrell Applewhite and Five Apples Inpatient Specialists LLC deny these allegations to the extent that they are criticisms directed at these Defendants. To the extent that these allegations are directed at Roseland Community Hospital, these Defendants make no answer to the allegations contained in this paragraph because they are not directed at them. To the extent that a response is deemed required, these Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations contained in this paragraph, and therefore neither admit nor deny the allegations—but demand strict proof thereof. As to the conclusory statements regarding the medical utility of PCR vs. Antibody testing, Dr. Terrell Applewhite and Five Apples Inpatient Specialists LLC deny those statements. To the extent that there are any well pleaded allegation in this Paragraph Applewhite and Five Apples deny each and every such allegation and state affirmatively that the antigen serology tests was used in place of PCR tests to determine if the patient had previously had COVID infection when the PCR tests were not available for use not in addition to PCR tests. Such tests were also used to assist in contact tracing to determine previous COVID infection.**

3

5.      Apparently not content to just make additional money by conducting and submitting claims for the unnecessary serology tests, several months into the Pandemic, Roseland and AML determined that they could make even more money by performing and billing for full blood panels as part of the serology test, even though the patient's inquiry was limited to COVID-19 screening. As a result, Roseland and AML were able to increase the amount they billed and were reimbursed for a single serology test from approximately $150 to $800 for what would be tens of thousands of tests.

**ANSWER:      Dr. Terrell Applewhite and Five Apples Inpatient Specialists LLC deny these allegations to the extent that they are criticisms directed at these Defendants. To the extent that these allegations are directed at Roseland Community Hospital, these Defendants make no answer to the allegations contained in this paragraph because they are not directed at them. To the extent that a response is deemed required, these Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations contained in this paragraph, and therefore neither admit nor deny the allegations—but demand strict proof thereof. As to the conclusory statements regarding the medical utility of PCR vs. Antibody testing, Dr. Terrell Applewhite and Five Apples Inpatient Specialists LLC deny those statements. Dr. Applewhite denies being responsible for the blanket serology tests alleged by the Plaintiff. To the extent that there are any well pleaded allegation in this Paragraph Applewhite and Five Apples deny each and every such allegation and state affirmatively that neither Applewhite nor Five Apples authorized, billed or was paid $800 for any such full blood panel screening.**

6.      Moreover, Roseland employed Dr. Terrill Applewhite, an independent contractor, as Medical Director overseeing the hospital's COVID-19 response. Applewhite and his company, Five Apples Inpatient Specialists LLC ("Five Apples") billed for services related to COVID-19 testing that were never provided. Specifically, Applewhite billed his time, certifying that he had conducted patient visits relating to and stemming from patients COVID-19 testing even though Applewhite provided no such services. Rather, it was AML that analyzed test samples and provided test results directly to patients. Applewhite billed $144 each for tens of thousands of such fictional "visits".

**ANSWER:      Dr. Terrell Applewhite and Five Apples Inpatient Specialists LLC admit that Dr. Applewhite was designated by Roseland to create and administer Roseland's COVID-19 testing response and admits that he supervised and directed providers who administered and reported on testing under his supervision. Dr. Terrell Applewhite and Five Apples Inpatient Specialists LLC admit that he billed for services for professional time related to the provision and administration of that testing and denies that he failed to provide services. Dr. Terrell Applewhite and Five Apples Inpatient Specialists LLC admit that AML provided laboratory services but denies remaining allegations as to AML's services. Dr. Terrell Applewhite and Five Apples Inpatient Specialists LLC deny that his services were fictional. Dr. Applewhite states affirmatively that he monitored, supervised and reviewed and interpreted test results for COVID testing and he designated persons to contact patients regarding their results and contacted many of these patients himself as well.**

7.    The Relator is an employee of Roseland where he works as the Senior Director of Development. He was involved with Roseland's COVID-19 initiative but only became aware of the unnecessary testing and false billing when he received Explanations of Benefits ("EOB") from his insurance carrier for several COVID-19 tests performed on his own children.

**ANSWER:    Dr. Terrell Applewhite and Five Apples Inpatient Specialists LLC lack knowledge or information sufficient to form a belief about the truth of the allegations contained in this paragraph, and therefore neither admit nor deny the allegations—but demand strict proof thereof. Defendant further states affirmatively that Relator was at all times aware of and facilitated Applewhite's and Five Apples work in the COVID program and facilitated in processing the identifying information for billing for tests for which Applewhite and Five Apples billed.**

8.    When he asked about the additional tests being run on his child's blood sample, the Relator was told frankly that Roseland and AML decided to run additional tests on the blood work to increase the Roseland's and AML's profits.

**ANSWER:    Dr. Terrell Applewhite and Five Apples Inpatient Specialists LLC lack knowledge or information sufficient to form a belief about the truth of the allegations contained in this paragraph, and therefore neither admit nor deny the allegations—but demand strict proof thereof.**

9.    The Relator also told Roseland about Applewhite's false billing practices. Recognizing the fraud perpetuated by Applewhite, Roseland terminated its relationship with the doctor on or about January 21, 2021 but did not report the prior false billings for tens of thousands of tests to anyone outside the hospital, thus concealing Applewhite's conduct.

**ANSWER:    Dr. Terrell Applewhite and Five Apples Inpatient Specialists LLC admit only that Dr. Applewhite terminated his relationship with Roseland. Dr. Terrell Applewhite and Five Apples Inpatient Specialists LLC deny any allegations contained in this paragraph that may be construed as pertaining to Dr. Terrell Applewhite and Five Apples Inpatient Specialists LLC. These Defendants lack knowledge or information sufficient to form a belief about the truth of the remaining allegations pertaining only to Roseland Hospital contained in this paragraph, and therefore neither admit nor deny the allegations— but demand strict proof thereof.**

10.    The FCA provides that any person who knowingly presents, or causes to be presented, a false or fraudulent claim to the U.S. Government for payment or approval is liable for a civil penalty of up to $11,000 for each such claim, plus three times the amount of the damages sustained by the Government.

**ANSWER:    This paragraph sets forth a legal conclusion to which no response is required. To the extent a response is deemed required, these Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations contained in this**

**paragraph, and therefore neither admit nor deny the allegations—but demand strict proof thereof. Further in answering, insofar as any allegations in this paragraph can be construed against Dr. Terrell Applewhite and Five Apples Inpatient Specialists LLC, these defendants deny each and every such allegation and deny that the statute referenced is applicable to any actions taken or not taken by Dr. Terrell Applewhite and Five Apples Inpatient Specialists LLC. Dr. Terrell Applewhite and Five Apples Inpatient Specialists LLC also deny that this statue represents a proper vehicle for recovery against Dr. Terrell Applewhite and Five Apples Inpatient Specialists LLC.**

11.     The FCA permits any person having information about a false or fraudulent claim against the Government to bring an action for himself and the Government, and to share in any recovery. The Act requires that the complaint be filed under seal for a minimum of 60 days (without service on the defendant during that time) to allow the Government time to conduct its own investigation and to determine whether to join the suit.

**ANSWER:   This paragraph sets forth a legal conclusion to which no response is required. To the extent a response is deemed required, these Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations contained in this paragraph, and therefore neither admit nor deny the allegations—but demand strict proof thereof. Further in answering, insofar as any allegations in this paragraph can be construed against Dr. Terrell Applewhite and Five Apples Inpatient Specialists LLC, these defendants deny each and every such allegation and deny that the statute referenced is applicable to any actions taken or not taken by Dr. Terrell Applewhite and Five Apples Inpatient Specialists LLC. Dr. Terrell Applewhite and Five Apples Inpatient Specialists LLC also deny that this statue represents a proper vehicle for recovery against Dr. Terrell Applewhite and Five Apples Inpatient Specialists LLC.**

12.     Similarly, the IFCA provides that any person who knowingly presents or causes to be presented a false claim to the State of Illinois (the "State" or "Illinois") for payment or approval is liable for a civil penalty for each such claim presented or paid, plus three times the amount of the damages sustained by the government and other relief. The IFCA also permits any person having information regarding a false claim to bring an action as a Relator or *qui tam* plaintiff.

**ANSWER:   This paragraph sets forth a legal conclusion to which no response is required. To the extent a response is deemed required, these Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations contained in this paragraph, and therefore neither admit nor deny the allegations—but demand strict proof thereof. Further in answering, insofar as any allegations in this paragraph can be construed against Dr. Terrell Applewhite and Five Apples Inpatient Specialists LLC, these defendants deny each and every such allegation and deny that the statute referenced is applicable to any actions taken or not taken by Dr. Terrell Applewhite and Five Apples Inpatient Specialists LLC. Dr. Terrell Applewhite and Five Apples Inpatient Specialists LLC also deny that this statue represents a proper vehicle for recovery against Dr. Terrell Applewhite and Five Apples Inpatient Specialists LLC.**

13.     **This paragraph sets forth a legal conclusion to which no response is required. To the extent a response is deemed required, these Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations contained in this paragraph, and therefore neither admit nor deny the allegations—but demand strict proof thereof. Further in answering, insofar as any allegations in this paragraph can be construed against Dr. Terrell Applewhite and Five Apples Inpatient Specialists LLC, these defendants deny each and every such allegation and deny that the statute referenced is applicable to any actions taken or not taken by Dr. Terrell Applewhite and Five Apples Inpatient Specialists LLC. Dr. Terrell Applewhite and Five Apples Inpatient Specialists LLC also deny that this statue represents a proper vehicle for recovery against Dr. Terrell Applewhite and Five Apples Inpatient Specialists LLC.**

        **<u>ANSWER:</u>   This paragraph sets forth a legal conclusion to which no response is required. To the extent a response is deemed required, these Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations contained in this paragraph, and therefore neither admit nor deny the allegations—but demand strict proof thereof. Further in answering, insofar as any allegations in this paragraph can be construed against Dr. Terrell Applewhite and Five Apples Inpatient Specialists LLC, these defendants deny each and every such allegation and deny that the statute referenced is applicable to any actions taken or not taken by Dr. Terrell Applewhite and Five Apples Inpatient Specialists LLC. Dr. Terrell Applewhite and Five Apples Inpatient Specialists LLC also deny that this statue represents a proper vehicle for recovery against Dr. Terrell Applewhite and Five Apples Inpatient Specialists LLC.**

14.     ICFPA's *qui tam* provision,740 ILCS 92/15, provides that any interested person may bring a civil action, in the name of the State of Illinois, for violations of ILCS 92/1-45, and by incorporation, 720 ILCS 5/46-1.

        **<u>ANSWER:</u>   This paragraph sets forth a legal conclusion to which no response is required. To the extent a response is deemed required, these Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations contained in this paragraph, and therefore neither admit nor deny the allegations—but demand strict proof thereof. Further in answering, insofar as any allegations in this paragraph can be construed against Dr. Terrell Applewhite and Five Apples Inpatient Specialists LLC, these defendants deny each and every such allegation and deny that the statute referenced is applicable to any actions taken or not taken by Dr. Terrell Applewhite and Five Apples Inpatient Specialists LLC. Dr. Terrell Applewhite and Five Apples Inpatient Specialists LLC also deny that this statue represents a proper vehicle for recovery against Dr. Terrell Applewhite and Five Apples Inpatient Specialists LLC.**

15.     Roseland and AML knowingly and intentionally submitted false claims for payment, from at least 2020 to today, in violation of the FCA, IFCA and ICFPA, by fraudulently billing for medically unnecessary testing.

**ANSWER: Dr. Terrell Applewhite and Five Apples Inpatient Specialists LLC make no answer to the allegations contained in this paragraph because they are not directed at them. To the extent that a response is deemed required, these Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations contained in this paragraph, and therefore neither admit nor deny the allegations—but demand strict proof thereof.**

16. Applewhite and Five Apples also knowingly and intentionally submitted false claims for payment, from at least 2020 to today, in violation of the FCA, IFCA and ICFPA, by billing for services that were not performed.

**ANSWER: Dr. Terrell Applewhite and Five Apples Inpatient Specialists LLC deny the allegations contained in this paragraph.**

17. Based on these Acts, the Relator seeks to recover on behalf of the United States and the State of Illinois against the Defendants all available damages, civil penalties, and other relief.

**ANSWER: Dr. Terrell Applewhite and Five Apples Inpatient Specialists LLC deny that Plaintiffs are entitled to the relief requested or to any relief at all.**

## II. THE PARTIES

18. Relator Elio Montenegro is a citizen and resident of the State of Illinois. Montenegro has worked in the healthcare field for about 25 years. He is currently employed by Roseland Community Hospital as a Senior Director of Development. He also serves as Roseland's coordinator for COVID-19 testing.

**ANSWER: Dr. Terrell Applewhite and Five Apples Inpatient Specialists LLC lack knowledge or information sufficient to form a belief about the truth of the allegations contained in this paragraph, and therefore neither admit nor deny the allegations—but demand strict proof thereof.**

19. Roseland Community Hospital Association ("Roseland") is an Illinois not-for-profit corporation with its principal place of business located at 45 W. 111th Street in Chicago, Illinois. Roseland is a "Safety Net Hospital" that provides medical services to economically disadvantaged patients regardless of their insurance status. The community of Roseland is 96% African American and over 80% of Roseland's patients are Medicaid patients, while others are on Medicare or have private insurance.

**ANSWER: Dr. Terrell Applewhite and Five Apples Inpatient Specialists LLC admit that Roseland Hospital is located at 45 W. 111th Street in Chicago, Illinois, and that Roseland provides medical services to patients, including economically disadvantaged patients. These Defendants lack knowledge or information sufficient to form a belief about the truth of the remaining allegations contained in this paragraph, and therefore neither admit nor deny the allegations—but demand strict proof thereof.**

20.     American Medical Lab, Ltd. ("AML") is an assumed name for Millennium Medical Group, Inc., an Illinois corporation, and its principal place of business is located at 45 W. 111th Street, Chicago, Illinois. AML runs the testing laboratory located in Roseland.

**ANSWER:     Dr. Terrell Applewhite and Five Apples Inpatient Specialists LLC lack knowledge or information sufficient to form a belief about the truth of the allegations contained in this paragraph, and therefore neither admit nor deny the allegations—but demand strict proof thereof.**

21.     Dr. Terrill Applewhite, MD ("Applewhite") served as Roseland's Medical Director for its COVID-19 response. He is medical doctor, and a citizen of Illinois. On information and belief, he lives at 3039 Woodhaven Drive, Bourbonnais, Illinois, 60914.

**ANSWER:     Dr. Applewhite admits that he was designated by Roseland Community Hospital to create, monitor, and administrate their COVID-19 testing program. Dr. Applewhite admits that he is a medical doctor, and citizen of Illinois.**

22.     Five Apples Inpatient Specialists, LLC ("Five Apples") is a limited liability company through which Applewhite runs his practice. Applewhite is the Medical Director and President/Chief Executive Officer of Five Apples. Its principal place of business is located at 400 N. Wall Street, Suite 308, Kankakee, Illinois.

**ANSWER:     Dr. Terrell Applewhite and Five Apples Inpatient Specialists LLC admit the allegations contained in this paragraph.**

## III.     JURISDICTION AND VENUE

23.     This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §1331, and 31 U.S.C. §3732, the latter of which specifically confers jurisdiction on this Court for actions brought pursuant to 31 U.S.C. §§3729 and 3730. This Court has supplemental jurisdiction over the state claim pursuant to 28 U.S.C. § 1367.

**ANSWER:     This paragraph sets forth a legal conclusion to which no response is required. To the extent a response is deemed required, Dr. Terrell Applewhite and Five Apples Inpatient Specialists LLC admit that the Court has jurisdiction over Federal False Claims Act causes of action, and would therefore have supplemental jurisdiction over related state claims. However, these Defendants deny that Plaintiff's Complaint adequately pleads a cause of action and thus adequately states a claim. These Defendants further deny that the Court has supplemental jurisdiction over allegations that do not set forth a viable claim.**

24.     There have been no public disclosures of the allegations or transactions contained herein that bar jurisdiction under 31 U.S.C. §3730(e).

**ANSWER:     This paragraph sets forth a legal conclusion to which no response is required. To the extent a response is deemed required, Dr. Terrell Applewhite and Five**

**Apples Inpatient Specialists LLC lack knowledge or information sufficient to form a belief about the truth of the allegations contained in this paragraph, and therefore neither admit nor deny the allegations—but demand strict proof thereof, investigation continues.**

25.     This Court has personal jurisdiction over the defendants pursuant to 31 U.S.C. §3732(a) because that section authorizes nationwide service of process and because all the defendants have at least minimum contacts with the United States, and can be found in, reside, or transact or have transacted, business in the Northern District of Illinois.

**ANSWER:    This paragraph sets forth a legal conclusion to which no response is required. To the extent a response is deemed required, Dr. Terrell Applewhite and Five Apples Inpatient Specialists LLC admit that they have minimum contacts with the United States, and either reside or transact business in the Northern District of Illinois.**

26.     Venue is proper in the Northern District of Illinois pursuant to 31 U.S.C. § 3732(a). At all times relevant to this Complaint, defendants regularly conducted substantial business within this district and maintained employees and/or offices in this district. In addition, the statutory violations, as alleged herein, occurred in this District.

**ANSWER:    This paragraph sets forth a legal conclusion to which no response is required. To the extent a response is deemed required, Dr. Terrell Applewhite and Five Apples Inpatient Specialists LLC admit that they regularly conducted business within the Northern District of Illinois. These Defendants deny the conclusory allegation that statutory violations occurred.**

27.     This action is not based on a public disclosure. Nevertheless, to the extent that there has been a public disclosure unknown to Montenegro, Montenegro is an original source under 31 U.S.C. §3730(e)(4). He has direct and independent knowledge of the information on which the allegations herein are based.

**ANSWER:    This paragraph sets forth a legal conclusion to which no response is required. To the extent a response is deemed required, Dr. Terrell Applewhite and Five Apples Inpatient Specialists LLC lack knowledge or information sufficient to form a belief about the truth of the allegations contained in this paragraph, and therefore neither admit nor deny the allegations—but demand strict proof thereof.**

IV.    **FACTUAL ALLEGATIONS**
   A.    **Reimbursement for Medical Services with Medicare, Medicaid, and Private Insurance**

28.     In 1965, Congress enacted Title XVIII of the Social Security Act, known as "Medicare," to pay for certain medical services and care. Entitlement to Medicare is based on age, disability or affliction with certain diseases. *See* 42 U.S.C. §1395 to 1395 ccc.

**ANSWER:    Dr. Terrell Applewhite and Five Apples Inpatient Specialists LLC admit the allegations contained in this paragraph.**

29.     Medicare is administered by the U.S. Department of Health and Human Services ("HHS") and supervised by the Centers for Medicare and Medicaid Services ("CMS"). Medicare pays claims submitted by participating health care providers for medical services rendered to Medicare beneficiaries.

**ANSWER:     Dr. Terrell Applewhite and Five Apples Inpatient Specialists LLC admit the allegations contained in this paragraph.**

30.     In 1965, the federal government also enacted the Medicaid program, a cooperative undertaking between the federal and state governments to help the states provide health care to low-income individuals. The Medicaid program pays for services pursuant to plans developed by the states and approved by the Secretary of HHS, through CMS. 42 U.S.C. §§ 1396a(a)-(b). States pay doctors, hospitals, pharmacies, and other providers and suppliers of medical items and services according to established rates. 42 U.S.C. §§1396b(a)(1), 1903(a)(1). The federal government then pays each state a statutorily established share of "the total amount expended ... as medical assistance under the State plan." *See* 42 U.S.C. §1396b(a)(1).

**ANSWER:     Dr. Terrell Applewhite and Five Apples Inpatient Specialists LLC admit the allegations contained in this paragraph.**

31.     The Illinois Department of Healthcare and Family Services ("HFS") administers the Medicaid program for the State of Illinois which receives more than half of the money for the program from the United States government. HFS administers the Medicaid program in accordance with the regulations of HHS and CMS to compensate healthcare professionals for services provided to Medicaid recipients.

**ANSWER:     Dr. Terrell Applewhite and Five Apples Inpatient Specialists LLC admit the allegations contained in this paragraph.**

32.     All claims for reimbursement are submitted to HFS and reimbursed in combination by both the U.S. government and the State of Illinois according to the federal medical assistance percentage established by HHS.

**ANSWER:     Dr. Terrell Applewhite and Five Apples Inpatient Specialists LLC admit the allegations contained in this paragraph.**

33.     At all times relevant to this Complaint, the United States provided funds to Illinois through the Medicaid program, pursuant to Title XIX of the Social Security Act, 42 U.S.C. §1396 *et seq.*

**ANSWER:     Dr. Terrell Applewhite and Five Apples Inpatient Specialists LLC admit the allegations contained in this paragraph.**

34.     Under the Social Security Act, medical care providers may seek payment from the

United States for providing "reasonable and necessary" health care services. 42 U.S.C. 1395y(a)(1). As a condition of billing the Government, and receiving Government reimbursement or funding, Defendants are required to certify and ensure that all services provided are medically necessary and are supported by documentation. 42 U.S.C. §1320c-5(a); 42 C.F.R. §466.71(d), 1004.10.

**ANSWER:** **Dr. Terrell Applewhite and Five Apples Inpatient Specialists LLC lack knowledge or information sufficient to form a belief about the truth of the allegations contained in this paragraph, and therefore neither admit nor deny the allegations—but demand strict proof thereof.**

35.    Health care providers submit Medicare and Medicaid bills electronically.

**ANSWER:** **Dr. Terrell Applewhite and Five Apples Inpatient Specialists LLC admit the allegations contained in this paragraph.**

36.    Numerous private insurers also reimburse health care providers for services performed on beneficiaries.

**ANSWER:** **Dr. Terrell Applewhite and Five Apples Inpatient Specialists LLC admit the allegations contained in this paragraph.**

37.    In order to obtain reimbursements from insurers for services provided, medical providers typically submit an electronic form itemizing the services and charges associated with the services. Payment by private insurers for these services are conditioned upon medical care providers following federal and state law.

**ANSWER:** **Dr. Terrell Applewhite and Five Apples Inpatient Specialists LLC lack knowledge or information sufficient to form a belief about the truth of the allegations contained in this paragraph, and therefore neither admit nor deny the allegations—but demand strict proof thereof.**

38.    Health care providers use Current Procedural Terminology ("CPT") codes. CPT codes are a uniform way to accurately describe medical, surgical and diagnostic services provided to patients and the codes are required when billing for services rendered to government and private insurers.

**ANSWER:** **Dr. Terrell Applewhite and Five Apples Inpatient Specialists LLC lack knowledge or information sufficient to form a belief about the truth of the allegations contained in this paragraph, and therefore neither admit nor deny the allegations—but demand strict proof thereof.**

**B.    The COVID-19 Pandemic and Testing for COVID-19**

39.    In early 2020, the United States, and the world, faced an unprecedented pandemic as a result of COVID-19 (the "Pandemic").

**ANSWER:** **Dr. Terrell Applewhite and Five Apples Inpatient Specialists LLC admit the allegations contained in this paragraph.**

40.     In response to the Pandemic, Congress passed The Families First Coronavirus Response Act (FFCRA) on March 18, 2020 and mandated that Medicare, Medicaid, and private insurance plans cover COVID-19 diagnostic testing and administration costs without cost-sharing.

**ANSWER:** **Dr. Terrell Applewhite and Five Apples Inpatient Specialists LLC admit the allegations made in this paragraph.**

41.     The CARES Act was enacted on March 27, 2020. Section 3201 of the CARES Act amended section 6001 of the FFCRA to include a broader range of diagnostic items and services that plans and issuers must cover without any cost-sharing requirements, prior authorization or other medical management requirements.

**ANSWER:** **Dr. Terrell Applewhite and Five Apples Inpatient Specialists LLC admit the allegations made in this paragraph.**

42.     Section 6008 of the FFCRA authorized a 6.2% increase in federal Medicaid matching funds to help states adequately respond to the COVID-19 Pandemic.

**ANSWER:** **Dr. Terrell Applewhite and Five Apples Inpatient Specialists LLC admit the allegations made in this paragraph.**

43.     Two different types of COVID-19 tests that are relevant here are used in the context of COVID-19. The first is a polymerase chain reaction (PCR) test that detects the presence of a virus if someone is infected at the time of the test. A PCR test is performed by taking a nasal or saliva swab.

**ANSWER:** **As to the conclusory statements regarding the medical utility of PCR vs. Antibody testing, Dr. Terrell Applewhite and Five Apples Inpatient Specialists LLC deny those statements.**

44.     The second type of test is a serology (or antibody) test that looks for antibodies in blood to determine if one had a past infection with the virus that causes COVID-19.

**ANSWER:** **As to the conclusory statements regarding the medical utility of PCR vs. Antibody testing, Dr. Terrell Applewhite and Five Apples Inpatient Specialists LLC deny those statements. Dr. Applewhite states affirmatively that this type of test was used to determine past contact with the virus and for contact tracing which was as important in the pandemic as finding active infection since many who contracted COVID had no symptoms and were unaware of exposure.**

45.     CMS determined that both PCR and serology tests qualified for reimbursement.

However, the basic requirements that medical services be reasonable and medically necessary still applied to COVID-19 testing. Thus, for a claim to be payable it must be medically necessary.

**ANSWER:** **To the extent that this paragraph can be construed to suggest that the testing administered and overseen by Dr. Applewhite was not medically necessary, Dr. Terrell Applewhite and Five Apples Inpatient Specialists LLC deny those statements.**

46.     It is the responsibility of the health care provider to conduct an individualized evaluation of each patient and to make a determination about what tests or services, if any, are medically appropriate in accordance with accepted standards of current medical practice. Determining medical necessity involves an assessment of the clinical condition, diagnosis, history and other clinical indications individual to each patient.

**ANSWER:** **Dr. Terrell Applewhite and Five Apples Inpatient Specialists LLC answer that the testing administered, overseen, and supervised by Dr. Applewhite was reasonable and indicated. These Defendants deny any remaining allegations contained in this paragraph. Dr. Applewhite states affirmatively that Applewhite assessed and /or supervised the assessment and results and follow up for every COVID patient who received a PCR or serology test who was tested through the Roseland COVID testing program**

C.     **"Roseland's Scheme to Defraud the Government and Private-Payors by Prescribing and Submitting Claims for Reimbursement for Medically Unnecessary Tests"**

47.     In February of 2020, in response to the increase in COVID-19 cases, Roseland geared up to perform COVID-19 testing.

**ANSWER:** **Dr. Terrell Applewhite and Five Apples Inpatient Specialists LLC admit the allegations contained in this paragraph.**

48.     Applewhite was named as Roseland's Medical Director of its COVID-19 Initiative at the time.

**ANSWER:** **Dr. Terrell Applewhite and Five Apples Inpatient Specialists LLC admit that Dr. Applewhite was designated by Roseland Community Hospital to create and administer its COVID-19 Initiative.**

49.     Roseland's COVID-19 initiative was multi-faceted and included the development of a drive-thru testing system to facilitate COVID-19 testing for the community. Negative results were provided by email and positive results were provided via a phone call by a clinician, usually a nurse.

**ANSWER:** **Dr. Terrell Applewhite and Five Apples Inpatient Specialists LLC admit that Roseland's COVID-19 initiative was multi-faced and included the development of drive-thru COVID-19 testing. These defendants lack knowledge or information sufficient to form a belief about the truth of the allegations contained in this paragraph that "negative**

14

results were provided by email and positive results were provided via a phone call" for each and every patient, and therefore neither admit nor deny those allegations—but demand strict proof thereof. Dr. Applewhite states affirmatively that he assessed and /or supervised the assessment and results and follow up for every COVID patient who received a PCR or serology test who was tested through the Roseland COVID testing program.

50.     Initially, Roseland sent its collected samples to Quest Diagnostics for analysis. Later, AML secured equipment and reagents to perform such testing onsite at Roseland Community Hospital using its own equipment and personnel. Roseland and AML's established relationship allowed Roseland to bill for the facility and administrative piece of the COVID-19 testing, while AML billed for the processing and review of the tests results.

**ANSWER:     Dr. Terrell Applewhite and Five Apples Inpatient Specialists LLC lack knowledge or information sufficient to form a belief about the truth of the allegations contained in this paragraph, and therefore neither admit nor deny the allegations—but demand strict proof thereof.**

51.     There was a high demand to identify active COVID-19 infections and to contact and quarantine infected patients. This was the purpose of the PCR diagnostic test. However, when Roseland realized it could bill patients for both a PCR test and a serology test, regardless of need, it developed a policy that was based not on the medical needs of the individual patient, but rather on the profits to be gained trading on the public's fear of COVID-19 to encourage unnecessary serology tests.

**ANSWER:     Dr. Terrell Applewhite and Five Apples Inpatient Specialists LLC admit that there was a high demand to identify active COVID-19 infections and treat those infected patients. As to the remaining allegations in this paragraph, these Defendants have no knowledge as to what Roseland realized and neither admit nor deny those allegations. Insofar as any allegations are contained in this paragraph against these Defendants they deny those allegations. Dr. Applewhite states affirmatively that he assessed and /or supervised the assessment and results and follow up for every COVID patient who received a PCR or serology test who was tested through the Roseland COVID testing program.**

52.     On March 31, 2020, Roseland developed a written COVID-19 testing policy whereby the determination of whether a PCR test, a serology test, or both, would be given was ostensibly left up to the patient without regard to any physician's determination of medical necessity. However, patients were left to make this decision based on one-sided information that encouraged patients to unwittingly elect unnecessary serology tests.

**ANSWER:     Dr. Terrell Applewhite and Five Apples Inpatient Specialists LLC have no knowledge as to the Roseland policy alleged, and neither admit nor deny those allegations. Insofar as any allegations are contained in this paragraph against these Defendants they deny those allegations.**

53.     In furtherance of this scheme, Roseland failed to advise its patients that a serology test would not test for an active COVID-19 infection, instead emphasizing that serology test results

would be provided within 24 hours while PCR test results would take 3-7 days. Not surprisingly, with this misleading information, upwards of 95% of patients opted for a serology test, often in conjunction with a PCR test — both of which were administered and billed for regardless of actual medical necessity.

**ANSWER:** **The allegations in this paragraph pertain to Roseland Community Hospital. To the extent that the allegations pertain to Roseland, Dr. Terrell Applewhite and Five Apples Inpatient Specialists LLC lack knowledge or information sufficient to form a belief about the truth of the allegations contained in this paragraph, and therefore neither admit nor deny the allegations—but demand strict proof thereof. To the extent that any allegations in this paragraph can be construed against Dr. Applewhite or Five Apples Inpatient Specialists, LLC, they deny that he separately/additionally billed for his professional time for both tests if performed on the same patient at the same time.**

54.     This policy of encouraging unnecessary serology tests regardless of the patient's clinical condition continues at Roseland to this day.

**ANSWER:** **Dr. Terrell Applewhite and Five Apples Inpatient Specialists LLC lack knowledge or information sufficient to form a belief about the truth of the allegations contained in this paragraph, and therefore neither admit nor deny the allegations—but demand strict proof thereof. Defendant further states affirmatively that the serology/antigen tests were not unnecessary during the time that the PCR tests were unavailable and that those tests provided information as to past exposure and infection and were necessary for contact tracing.**

55.     Defendants knew that in order to bill Medicare and Medicaid for this testing, a physician's order was needed and that this required a physician to conduct an individualized assessment of each patient and develop a plan of care which included testing and services which were medically necessary. Despite this, no doctor at Roseland made any independent determination of the medical necessity of either type of COVID-19 test for Roseland's patients. Rather, Applewhite wrote a single prescription that was then was photocopied tens of thousands of times for different patients. This resulted in massive amounts of unnecessary care, overtreatment of patients, and overbilling to Medicare and private insurers, for the sole purpose of obtaining larger reimbursements and greater profits for Roseland, AML, Applewhite and Five Apples. Billing was submitted by a third-party known as "Change Healthcare."

**ANSWER:** **Dr. Terrell Applewhite and Five Apples Inpatient Specialists LLC admit that Dr. Applewhite wrote a prescription for COVID testing. Dr. Terrell Applewhite and Five Apples Inpatient Specialists LLC deny the remaining allegations contained in this paragraph.**

56.     By submitting orders for both PCR and serology testing without conducting individualized assessments of each patient's clinical condition, Roseland falsely represented to payors that each test was medically necessary.

**ANSWER:** The allegations in this paragraph pertain to Roseland Community Hospital. To the extent that the allegations pertain to Roseland, Dr. Terrell Applewhite and Five Apples Inpatient Specialists LLC lack knowledge or information sufficient to form a belief about the truth of the allegations contained in this paragraph, and therefore neither admit nor deny the allegations—but demand strict proof thereof. To the extent that any allegations in this paragraph can be construed against Dr. Applewhite or Five Apples Inpatient Specialists, LLC, the allegations are denied.

57.     In reality, the serology tests were not medically necessary or appropriate in the majority of cases. Roseland and the other defendants knew this yet continued to submit false claims for reimbursement with the intent to defraud the payors.

**ANSWER:** These Defendants deny the allegations contained in this paragraph.

58.     In addition to conducting both PCR and antibody testing Roseland decided it could use the drawn blood from the antibody testing to further defraud the government. Specifically, approximately three months into the Pandemic, Roseland decided to use the blood drawn for COVID-19 tests to test for additional, and unnecessary, conditions such as chlamydia pneumoniae (a bacterial infection), Mycoplasma pneumoniae (a bacterial infection), Bordetella (a bacterial infection) and other viruses. In other words, while patients came to the hospital for a COVID-19 test, Roseland ran and billed for a "full panel" of blood tests. These additional and unnecessary tests run automatically on all patients that received a COVID-19 serology test were not based on any determination as to whether such tests were medically necessary; the tests were conducted regardless of the patient's clinical condition, history or even desires; and the sole purpose of this additional testing was the enrichment of Roseland and the other defendants at the expense of third-party payors including Medicare, Medicaid and private insurance companies.

**ANSWER:** The allegations in this paragraph pertain to Roseland Community Hospital. To the extent that the allegations pertain to Roseland, Dr. Terrell Applewhite and Five Apples Inpatient Specialists LLC lack knowledge or information sufficient to form a belief about the truth of the allegations contained in this paragraph, and therefore neither admit nor deny the allegations—but demand strict proof thereof. To the extent that any allegations in this paragraph can be construed against Dr. Applewhite or Five Apples Inpatient Specialists, LLC, the allegations are denied.

59.     For example, Roseland would bill approximately $600 for a COVID-19 PCR and serology test but for the full panels of blood tests that Roseland determined to bill, this increased to upwards of thousands of dollars. On average, Roseland and AML could recoup up to an additional $600-$700 for each these full blood panels, in addition to the $150 they were receiving for the COVID-19 serology test. This was repeated in tens of thousands of cases.

**ANSWER:** The allegations in this paragraph pertain to Roseland Community Hospital. To the extent that the allegations pertain to Roseland, Dr. Terrell Applewhite and Five Apples Inpatient Specialists LLC lack knowledge or information sufficient to form a belief about the truth of the allegations contained in this paragraph, and therefore neither admit nor deny the allegations—but demand strict proof thereof. To the extent that any

allegations in this paragraph can be construed against Dr. Applewhite or Five Apples Inpatient Specialists, LLC, the allegations are denied.

60.     Roseland and AML sent bills or claims for these medically unnecessary tests to Medicare, Medicaid, and to private insurers, including but not limited to Blue Cross Blue Shield, AMITA Health and UnitedHealthcare, falsely representing that these tests were medically necessary.

**ANSWER:     The allegations in this paragraph pertain to Roseland Community Hospital. To the extent that the allegations pertain to Roseland, Dr. Terrell Applewhite and Five Apples Inpatient Specialists LLC lack knowledge or information sufficient to form a belief about the truth of the allegations contained in this paragraph, and therefore neither admit nor deny the allegations—but demand strict proof thereof. To the extent that any allegations in this paragraph can be construed against Dr. Applewhite or Five Apples Inpatient Specialists, LLC, the allegations are denied.**

61.     Relator realized that additional and unnecessary tests were being performed on patients' blood when he received an LOB for his own child who had a PCR and serology test performed. The EOB displayed $2,986 in submitted charges for what he thought was only COVID-19 testing but which in fact was both a PCR test and a full blood panel test for unrelated conditions not indicated whatsoever.

**ANSWER:     Dr. Terrell Applewhite and Five Apples Inpatient Specialists LLC lack knowledge or information sufficient to form a belief about the truth of the allegations contained in this paragraph, and therefore neither admit nor deny the allegations—but demand strict proof thereof.**

62.     Relator expressed his concerns about this billing to both the CEO of Roseland, Tim Egan, and the CFO of Roseland, Robert Vais. When he asked why tests unrelated to COVID-19 were being performed, both Egan and Vais indicated that it was so Roseland could earn more profits, Both Egan and Vais also told Relator that AML, through its President Walid Dabaj, told them it was proper to run and bill for these additional tests.

**ANSWER:     Dr. Terrell Applewhite and Five Apples Inpatient Specialists LLC lack knowledge or information sufficient to form a belief about the truth of the allegations contained in this paragraph, and therefore neither admit nor deny the allegations—but demand strict proof thereof.**

63.     Roseland and AML incurred the same costs to run just the COVID-19 test as it incurred when it ran additional and unnecessary tests, so the increased billing for unnecessary full blood panels amounted to pure profit for them at the expense of the third-party payors, including the United States government, the State of Illinois and private insurance companies.

**ANSWER:     Dr. Terrell Applewhite and Five Apples Inpatient Specialists LLC lack knowledge or information sufficient to form a belief about the truth of the allegations**

contained in this paragraph, and therefore neither admit nor deny the allegations—but demand strict proof thereof.

64. Roseland began receiving complaints from insured patients as they were receiving EOBs and/or bills that showed amounts owed for this additional testing. Concerned about patients complaining to the government or their insurers about the unnecessary testing, Roseland and AML sent letters on "Change Healthcare" letterhead to these patients, indicating that the bill was in error and that no money was due for their co-payment. However, the claims to the Government payors and private insurers were not withdrawn. This was because Roseland and AML, potentially with the involvement of Change Healthcare, were looking to bilk only the Government and private insurers.

**ANSWER: The allegations in this paragraph pertain to Roseland Community Hospital. To the extent that the allegations pertain to Roseland, Dr. Terrell Applewhite and Five Apples Inpatient Specialists LLC lack knowledge or information sufficient to form a belief about the truth of the allegations contained in this paragraph, and therefore neither admit nor deny the allegations—but demand strict proof thereof. To the extent that any allegations in this paragraph can be construed against Dr. Applewhite or Five Apples Inpatient Specialists, LLC, the allegations are denied.**

**D. "Applewhite and Five Apples' Scheme to Defraud the Government and Private-Payors For Services Related to COVID-19 Testing They Did Not Provide"**

65. In addition to prescribing patients medically unnecessary blood work, Applewhite was submitting false claims for services related to COVID-19 testing through his practice, Five Apples. This included patients served at Roseland.

**ANSWER: Dr. Terrell Applewhite and Five Apples Inpatient Specialists LLC deny the allegations contained in this paragraph.**

66. In order to obtain reimbursement from insurers for services provided, Applewhite and AML were required to submit documentation to the payors describing the services performed and including a CPT code that indicated the type and level of services performed by the provider. By submitting claims for payment or reimbursement physicians represent to government payors and private insurance companies that the medical services for which the particular CPT code represents, were in fact performed.

**ANSWER: The allegations in this paragraph pertain to AML as well as Dr. Applewhite. To the extent that the allegations pertain to AML, Dr. Terrell Applewhite and Five Apples Inpatient Specialists LLC lack knowledge or information sufficient to form a belief about the truth of the allegations contained in this paragraph, and therefore neither admit nor deny the allegations—but demand strict proof thereof. To the extent that any allegations in this paragraph can be construed against Dr. Applewhite or Five Apples Inpatient Specialists, LLC, the allegations are denied.**

67.     Routinely during the relevant period, Applewhite knowingly created and presented for reimbursement false and fraudulent claims for payment for medical services that neither he nor Five Apples provided. In total, this included tens of thousands of claims for reimbursement of $144 per patient under CPT Code 99203.

**ANSWER:**     **Dr. Terrell Applewhite and Five Apples Inpatient Specialists LLC deny the allegations contained in this paragraph.**

68.     These claims were false because CPT Code 99203 requires that there be an office or other outpatient visit for the evaluation and management of a new patient. Such visits require three key components: taking of a detailed patient history; conducting a detailed examination of the patient; and making a medical decision based on the information the physician thus learns. For services provided using this code, physicians typically spend 30 minutes face-to-face with the patient and/or family.

**ANSWER:**     **Dr. Terrell Applewhite and Five Apples Inpatient Specialists LLC deny the conclusory allegations made in this paragraph. These Defendants deny the remaining allegations contained in this paragraph. Defendants state affirmatively that for all intents and purposes, Dr. Applewhite's office for outpatient visits was the Hospital where he supervised and taught staff how to administer and preserve the tests and the conference room where he reviewed, supervised and monitored the relation of those test results to the individual patients.**

69.     In Applewhite's case, however, he did not conduct patient visits, consult with the patients, review their COVID-19 results or communicate those results to them. Nevertheless, Applewhite and Five Apples continually submitted false claims for reimbursement for patient visits resulting from the COVID-19 testing.

**ANSWER:**     **These Defendants deny the allegations contained in this paragraph. Defendants state affirmatively that for all intents and purposes, Dr. Applewhite's office for outpatient visits was the Hospital where he supervised and taught staff how to administer and preserve the tests and the conference room where he reviewed, supervised and monitored the relation of those test results to the individual patients.**

70.     Beginning in 2020 and continuing through his termination from Roseland, Applewhite and Five Apples, in furtherance of their scheme to defraud, submitted to Medicare/Medicaid and third-party payors bills and claims for reimbursement for services not provided, all with the intent of deceiving government payors and private insurers into paying false claims related to tens of thousands of patient visits purportedly conducted by Applewhite but which did not occur.

**ANSWER:**     **The allegations in this paragraph pertain to Roseland as well as Dr. Applewhite. To the extent that the allegations pertain to Roseland, Dr. Terrell Applewhite and Five Apples Inpatient Specialists LLC lack knowledge or information sufficient to form**

**a belief about the truth of the allegations contained in this paragraph, and therefore neither admit nor deny the allegations—but demand strict proof thereof. To the extent that any allegations in this paragraph can be construed against Dr. Applewhite or Five Apples Inpatient Specialists, LLC, the allegations are denied, including the conclusory allegations of the pleader.**

71.     Relator realized that Five Apples was billing for Applewhite's time when another member of his family was tested for COVID-19 at Roseland, and the EOB showed a claim by Five Apples under CPT Code 99203. However, Relator knew that Applewhite had not seen his family member or been involved in his testing process. Additionally, due to Relator's position at Roseland and his conversations with high level administrative personnel, he also knew that all the processing and reviewing of testing was done by AML.

**ANSWER:     These Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations contained in this paragraph, and therefore neither admit nor deny the allegations—but demand strict proof thereof. Dr. Applewhite and Five Apples Inpatient Specialists, LLC deny that Dr. Applewhite was not involved in the testing process at Roseland.**

72.     On or about September 20, 2020, Relator informed Egan that Applewhite was falsely billing for patient visits, when in fact he had no contact with the patients. In response, Roseland ultimately terminated its professional relationship with Applewhite. However, Roseland never disclosed these false billings to any government agency or private insurer and continues to conceal the conduct.

**ANSWER:     These Defendants admit only that Roseland and Dr. Applewhite's professional relationship was terminated after September 2020. These Defendants lack knowledge or information sufficient to form a belief about the truth of the remaining allegations contained in this paragraph concerning Roseland's conduct and including conversations between Relator and Egan, and therefore these Defendants neither admit nor deny those allegations—but demand strict proof thereof. Dr. Applewhite and Five Apples Inpatient Specialists, LLC deny any remaining allegations in this paragraph.**

73.     On information and belief, Applewhite billed for approximately 20,000 to 25,000 patient visits, receiving $144 for each, resulting in between $2.88 and $3.6 million in fraudulent billing to government and private insurers.

**ANSWER:     These Defendants deny the allegations contained in this paragraph.**

74.     The matters alleged herein have not been "publicly disclosed" within the meaning of the FCA.

**ANSWER:     This paragraph sets forth a legal conclusion to which no response is required. To the extent a response is deemed required, these Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations contained in this**

paragraph, and therefore neither admit nor deny the allegations—but demand strict proof thereof.

### E. Procedural Compliance

These Defendants make no answer to the allegations contained in Paragraphs 75 through 83 of Plaintiff's Complaint because they concern legal conclusions that are not directed at these Defendants. To the extent that a response is deemed required, these Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations contained in this paragraph, and therefore neither admit nor deny the allegations—but demand strict proof thereof.

### <u>COUNT I</u>
### Federal False Claims Act
### 31 U.S.C. §§ 3729(a) (Roseland, AML, Applewhite and Five Apples)

84.     Relator incorporates by reference and re-alleges Paragraphs 1-83 as if fully set forth herein. This Count is brought by Relator in the name of the United States under the *qui tam* provisions of 31 U.S.C. §3730 for defendants' violations of 31 U.S.C. §3729.

**ANSWER:     These Defendants re-state and re-allege their answers to Paragraphs 1-83 as if fully set forth herein. These Defendants admit that the Relator is bringing Count 1 in the name of the United States, but deny the conclusory allegation that they violated 31 U.S.C. §3729.**

85.     Acting as aforementioned, Defendants knowingly or acting with deliberate ignorance, or with reckless disregard for the truth, caused false and/or fraudulent payments to be presented to the United States government.

**ANSWER:     These Defendants deny the allegations contained in this paragraph.**

86.     By virtue of the above-described acts, among others, defendants Roseland and AML knowingly caused to be presented, and possibly continue to cause to be presented, directly or indirectly to officers, employees, or agents of the United States, false or fraudulent claims for payment or approval for defendants' medically unnecessary testing.

**ANSWER:     These Defendants make no answer to the allegations contained in this paragraph because they are not directed at them. To the extent that a response is deemed required, these Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations contained in this paragraph, and therefore neither admit nor deny the allegations—but demand strict proof thereof.**

87.     By virtue of the above-described acts, among others, defendants Applewhite and Five Apples knowingly caused to be presented, and possibly continue to cause to be presented, directly or indirectly to officers, employees, or agents of the United States, false or fraudulent claims for payment or approval for medical services that these defendants did not perform.

**ANSWER:** These Defendants deny the allegations contained in this paragraph.

88.    By virtue of the above-described acts, among others, defendants Roseland and AML knowingly made, used, or caused to be made or used, and may continue to make, use, or cause to be made or used, false records and statements to obtain payment from the United States for false or fraudulent claims for medically unnecessary testing.

**ANSWER:** These Defendants make no answer to the allegations contained in this paragraph because they are not directed at them. To the extent that a response is deemed required, these Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations contained in this paragraph, and therefore neither admit nor deny the allegations—but demand strict proof thereof.

89.    By virtue of the above-described acts, among others, defendants Applewhite and Five Apples knowingly made, used, or caused to be made or used, false records and statements to obtain payment from the United States for false or fraudulent claims for medical services that these defendants did not perform.

**ANSWER:** These Defendants deny the allegations contained in this paragraph.

90.    By virtue of the above-described acts, all the defendants conspired to defraud the United States by presenting or causing to be presented false or fraudulent claims for payment.

**ANSWER:** These Defendants deny the allegations contained in this paragraph.

91.    The false or fraudulent claims to the United States were material.

**ANSWER:** This paragraph sets forth a legal conclusion to which no response is required. To the extent a response is deemed required, these Defendants deny the allegations contained in this paragraph.

92.    Plaintiff United States, being unaware of the falsity of the claims and/or statements made or caused by the defendants, and in reliance on the accuracy thereof, paid and may continue to pay for defendants' unnecessary medical testing and services for which it billed, but did not perform.

**ANSWER:** This paragraph sets forth a legal conclusion to which no response is required. To the extent a response is deemed required, these Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations contained in this paragraph, and therefore neither admit nor deny the allegations—but demand strict proof thereof. Dr. Applewhite and Five Apples Inpatient Specialists, LLC deny any remaining allegations.

93.    The United States sustained damages as a direct and proximate result of the defendants' actions.

**ANSWER:** **This paragraph sets forth a legal conclusion to which no response is required. To the extent a response is deemed required, the allegations in this paragraph pertain to Roseland, AML, as well as Dr. Applewhite. To the extent that the allegations pertain to Roseland or AML, Dr. Terrell Applewhite and Five Apples Inpatient Specialists LLC lack knowledge or information sufficient to form a belief about the truth of the allegations contained in this paragraph, and therefore neither admit nor deny the allegations—but demand strict proof thereof. To the extent that any allegations in this paragraph can be construed against Dr. Applewhite or Five Apples Inpatient Specialists, LLC, the allegations are denied, including the conclusory allegations of the pleader.**

## COUNT II
### Illinois False Claims Act
### 740 ILCS § 175/3 (Roseland, AML, Applewhite, and Five Apples)

94.     The Relator re-alleges and incorporates herein by reference paragraphs 1-93 above, as if fully set forth herein.

**ANSWER:** **These Defendants re-state and re-allege their answers to Paragraphs 1-93 as if fully set forth herein.**

95.     By virtue of the above-described acts, among others, defendants Roseland and AML knowingly caused to be presented, and possibly continue to cause to be presented, directly or indirectly to officers, employees, or agents of the State of Illinois, false or fraudulent claims for payment or approval for defendants' medically unnecessary testing.

**ANSWER:** **These Defendants make no answer to the allegations contained in this paragraph because they are not directed at them. To the extent that a response is deemed required, these Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations contained in this paragraph, and therefore neither admit nor deny the allegations—but demand strict proof thereof.**

96.     Acting as aforementioned, defendants Applewhite and Five Apples knowingly, or acting with deliberate ignorance or with reckless disregard for the truth, made, used, or caused to be made or used, and may continue to make, use, or cause to be made or used, false records and statements to obtain payment from the State of Illinois for false or fraudulent claims for medically unnecessary testing.

**ANSWER:** **These Defendants deny the allegations contained in this paragraph.**

97.     By virtue of the above-described acts, among others, defendants Roseland and AML knowingly made, used, or caused to be made or used, and may continue to make, use, or cause to be made or used, false records and statements to obtain payment from the State of Illinois for false or fraudulent claims for medically unnecessary testing.

**ANSWER:** **These Defendants make no answer to the allegations contained in this paragraph because they are not directed at them. To the extent that a response is deemed required, these Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations contained in this paragraph, and therefore neither admit nor deny the allegations—but demand strict proof thereof.**

98.     By virtue of the above-described acts, among others, defendants Applewhite and Five Apples knowingly made, used, or caused to be made or used, false records and statements to obtain payment from the State of Illinois for false or fraudulent claims for medical services that these defendants did not perform.

**ANSWER:** **These Defendants deny the allegations contained in this paragraph.**

99.     By virtue of the above-described acts, all the defendants conspired to defraud the State of Illinois by presenting or causing to be presented false or fraudulent claims for payment.

**ANSWER:** **These Defendants deny the allegations contained in this paragraph.**

100.     The false or fraudulent claims to the State of Illinois were material.

**ANSWER:** **This paragraph sets forth a legal conclusion to which no response is required. To the extent a response is deemed required, these Defendants deny the allegations contained in this paragraph.**

101.     Plaintiff State of Illinois, being unaware of the falsity of the claims and/or statements made or caused by the defendants, and in reliance on the accuracy thereof, paid and may continue to pay for defendants' unnecessary medical testing and services for which it billed, but did not perform.

**ANSWER:** **This paragraph sets forth a legal conclusion to which no response is required. To the extent a response is deemed required, these Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations contained in this paragraph, and therefore neither admit nor deny the allegations—but demand strict proof thereof.**

102.     The State of Illinois sustained damages as a direct and proximate result of the defendants' actions.

**ANSWER:** **This paragraph sets forth a legal conclusion to which no response is required. To the extent a response is deemed required, the allegations in this paragraph pertain to Roseland, AML, as well as Dr. Applewhite. To the extent that the allegations pertain to Roseland or AML, Dr. Terrell Applewhite and Five Apples Inpatient Specialists LLC lack knowledge or information sufficient to form a belief about the truth of the allegations contained in this paragraph, and therefore neither admit nor deny the allegations—but demand strict proof thereof. To the extent that any allegations in this paragraph can be**

construed against Dr. Applewhite or Five Apples Inpatient Specialists, LLC, the allegations are denied, including the conclusory allegations of the pleader.

**COUNT III**
**Illinois Insurance Claims Fraud Prevention Act**
**740 ILCS 92/1 *et seq.* (Roseland, AML, Applewhite, and Five Apples)**

103.     Relator incorporates by reference and re-allege Paragraphs 1-102 as if fully set forth herein. This Count is brought by Relator in the name of the State of Illinois under the *qui tam* provisions of the Illinois Insurance Claims Fraud Prevention Act, 740 ILCS 92/15.

**ANSWER:     These Defendants re-state and re-allege their answers to Paragraphs 1-102 as if fully set forth herein. These Defendants admit that the Relator is bringing Count 3 in the name of the State of Illinois under the *qui tam* provisions of the Illinois Insurance Claims Fraud Prevention Act, 740 ILCS 92/15.**

104.     Relator is an interested person with direct, personal knowledge of the allegations of this complaint, who has brought this action pursuant to 740 ILCS 92/1-45 on behalf of himself and the State of Illinois.

**ANSWER:     This paragraph sets forth a legal conclusion to which no response is required. To the extent a response is deemed required, these Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations contained in this paragraph, and therefore neither admit nor deny the allegations—but demand strict proof thereof.**

105.     Subsection 5(a) of the Illinois Insurance Claims Fraud Prevention Act provides for a civil action against any person who commits the crime of insurance fraud or who knowingly offers or pays "any remuneration directly or indirectly, in cash or in kind, to induce any person to procure clients or patients to obtain services or benefits under a contract of insurance or that will be the basis for a claim against an insured person or the person's insurer." 740 ILCS 92/5(a).

**ANSWER:     This paragraph sets forth a legal conclusion to which no response is required. To the extent a response is deemed required, these Defendants admit only that Subsection 5(a) of the Illinois Insurance Claims Fraud Prevention Act states that "it is unlawful to knowingly offer or pay any remuneration directly or indirectly, in cash or in kind, to induce any person to procure clients or patients to obtain services or benefits under a contract of insurance or that will be the basis for a claim against an insured person or the person's insurer." 740 ILCS 92/5(a).**

106.     Pursuant to 720 ILCS 5/46-1 of the Illinois Criminal Code, a person commits the offense of insurance fraud when he: "knowingly obtains, attempts to obtain, or causes to be obtained, by deception, control over property of an insurance company or self-insured entity by the making of a false claim or by causing a false claim to be made on any policy of insurance issued by an insurance company."

**ANSWER:** This paragraph sets forth a legal conclusion to which no response is required. To the extent a response is deemed required, these Defendants deny the allegations contained within this paragraph. According to www.ilga.gov, 720 ILCS 5/Art. 46 was repealed by P.A. 96-1551, effective July 1, 2011. These Defendants therefore demand strict proof thereof on Plaintiff's allegations concerning the definition of Insurance Fraud under the applicable section of the Illinois Criminal Code.

107.    Subsection 15(a) of the Illinois Insurance Claims Fraud Prevention Act provides for a *qui tam* civil action in order to create incentives for private individuals who are aware of fraud against insurers to help disclose and prosecute the fraud. Subsection 15(a) provides: "An interested person may bring a civil action for a violation of this Act for the person and the State of Illinois. The action shall be brought in the name of the State." 740 ILCS 92/15(a).

**ANSWER:** This paragraph sets forth a legal conclusion to which no response is required. To the extent a response is deemed required, these Defendants admit the allegations contained within this paragraph.

108.    By committing the acts alleged above, defendants violated 740 ILCS 92/1-45 by repeatedly, willfully, and intentionally causing to be obtained, by deception, control over the property of insurance companies by causing a false claim to be made on a policy of insurance.

**ANSWER:** This paragraph sets forth a legal conclusion to which no response is required. To the extent a response is deemed required, these Defendants deny the allegations contained within this paragraph.

109.    The actions of defendants, including billing for services not rendered and billing for unnecessary tests constitute making false claims for the purpose of obtaining by deception control over the property of the insurance companies and insurance proceeds within the meaning of 720 ILCS 5/46-1.

**ANSWER:** These Defendants deny the allegations contained in this paragraph.

110.    By committing the acts alleged above, defendants Roseland and AML violated 740 ILCS 92/1-45 by repeatedly, willfully and intentionally conspiring to and causing false claims for reimbursement to insurers to be submitted for medically unnecessary testing from 2020 to today.

**ANSWER:** These Defendants make no answer to the allegations contained in this paragraph because they are not directed at them. To the extent that a response is deemed required, these Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations contained in this paragraph, and therefore neither admit nor deny the allegations—but demand strict proof thereof.

111.    By committing the acts alleged above, defendants Applewhite and Five Apples violated 740 ILCS 92/1-45 by repeatedly, willfully and intentionally conspiring to and causing false claims for reimbursement to insurers to be submitted for medical services that were not rendered from 2020 to on or about January 21, 2021.

**ANSWER:** **These Defendants deny the allegations contained in this paragraph.**

112.    By failing to disclose and actively concealing that claims submitted to insurers were for medically unnecessary testing or medical services that were not rendered, the claims the defendants conspired to, and caused to be submitted to insurers contained false, incomplete, and misleading information that was material to the claim.

**ANSWER:** **This paragraph sets forth a legal conclusion to which no response is required. To the extent a response is deemed required, these Defendants deny the allegations contained within this paragraph.**

113.    Insurers were unaware of the falsity of the records, statements, and claims made or caused to be made by defendants at the time the insurers reimbursed defendants and for medically unnecessary tests and unperformed services.

**ANSWER:** **These Defendants deny the allegations contained in this paragraph.**

114.    Each claim for reimbursement from an insurer that defendants conspired to, or caused, to be submitted for providing medically unnecessary testing or unperformed services represents a false claim.

**ANSWER:** **These Defendants deny the allegations contained in this paragraph.**

115.    As a result of the defendants' certified claims for payment in its reimbursement submissions to the private insurers, at least one private insurer made payments to the defendants for medically unnecessary testing and for services that were not performed.

**ANSWER:** **These Defendants deny the allegations contained in this paragraph.**

116.    Relator cannot at this time identify all of the false claims to private insurers for payment that were caused by defendants' conduct. The false or fraudulent claims were presented by multiple separate entities across the State. Relator has no control over or dealings with such entities and has no access to the records in their possession.

**ANSWER:** **These Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations contained in this paragraph, and therefore neither admit nor deny the allegations—but demand strict proof thereof.**

117.    The Illinois State Government is entitled to receive three times the amount of each claim for compensation submitted by defendants in violation of 740 ILCS 92/5. Additionally, the Illinois State Government is entitled to the maximum penalty of $10,000 for each and every violation alleged herein.

**ANSWER:** **This paragraph sets forth a legal conclusion regarding available and applicable damages, to which no response is required. To the extent that a response is deemed**

**required, these Defendants deny that Plaintiffs are entitled to the relief requested or to any relief at all.**

## PRAYER FOR RELIEF

**WHEREFORE**, Relator requests that judgment be entered against Defendants, ordering that:

(a) Defendants cease and desist from violating the Federal False Claims Act, 31 U.S.C. § 3729, *et seq.*, the Illinois False Claims Act, 740 ILCS 175/1, and the Illinois Insurance Claims Frauds Prevention Act, 740 ILCS 92;

(b) Defendants pay an amount equal to three times the amount of damages the United States and the States of Illinois have sustained because of Defendants' actions, plus a civil penalty against Defendants of not less than $5,500, and not more than $11,000 for each violation of 31 U.S.C. § 3729, not less than $5,500 and not more than $11,000 for each violation of 740 ILCS 175/3, not less than $5,000 nor more than $10,000 for each violation of 740 ILCS 92/5(b);

(c) Relator be awarded the maximum amount allowed pursuant to 31 U.S.C. § 3730(d), 740 ILCS 175/4, and 740 ILCS Section 92/25;

(d) Relator be awarded all costs of this action, including attorneys' fees, expenses, and costs pursuant to 31 U.S.C. § 3730(d), 740 ILCS 175/4, and the comparable provisions of the ICFPA; and

(e) The United States, the States of Illinois, and Relator be granted all such other relief as the Court deems just and proper.

**ANSWER:   This part of Plaintiff's Complaint sets forth Plaintiff's request for relief, to which no response is required.  To the extent that a response is deemed required, these Defendants deny that Plaintiffs are entitled to the relief requested or to any relief at all.**

**Except to the extent expressly admitted or qualified above, these Defendants deny each and every allegation of Plaintiff's Complaint.**

**Wherefore, having answered, these Defendants respectfully requests that the Court enter judgment in their favor, award Defendants their costs, and provide such other relief as the Court deems just and proper.**

## JURY DEMAND

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Defendants Dr. Terrell Applewhite and Five Apples Inpatient Specialists LLC hereby demands a trial by jury.

Date: January 15, 2024                                   Respectfully submitted,

/s/ *Matthew A. Reddy*
Matthew A. Reddy

John V. Smith II (IL Bar No. 6183711)
Matthew A. Reddy (IL Bar No. 6302815)
Alexander J. Beehler (IL Bar No. 6323624)
FORAN GLENNON PALANDECH PONZI
& RUDLOFF, PC
221 N. LaSalle St., Suite 1400
Chicago, Illinois 60601
Tel: (312) 863-5000
jsmith@fgppr.com
mreddy@fgppr.com
abeehler@fgppr.com
*Attorneys for Defendants Dr. Terrill Applewhite*
*& Five Apples Inpatient Specialists LLC*

## CERTIFICATE OF SERVICE

The undersigned, one of the attorneys of record herein, hereby certifies that on

**December 15, 2023,** the foregoing **Answer to Plaintiff's Complaint** was electronically filed

with the Clerk of the U.S. District Court using the CM/ECF System, which will send notification

of such filing to the following:

**Attorneys for Plaintiff**
Ricardo Meza, Esq. (Atty. No. 6202784)
MEZA LAW
161 N. Clark Street, Suite 1600
Chicago, IL 60601
(312) 802-0336
rmeza@meza.law

Robert M. Andalman, Esq.
Diana C. Guler, Esq.
Rachael C.B. Blackburn, Esq.
William Norman, Esq.
A&G LAW, LLC
542 S. Dearborn, 10th Floor
Chicago, IL 60605
(312) 341-3900
randalman@aandglaw.com
dguler@aandglaw.com
rblackburn@aandglaw.com
wnorman@aandglaw.com

**Attorneys for Roseland Community Hospital Association**
David M. Goldhaber, Esq.
WILSON, ELSER, MOSKOWITZ, EDELMAN & DICKER LLP
55 West Monroe Street – Suite 3800
Chicago, Illinois 60603
Tel: (312) 704-0550
Fax: (312) 704-1522
david.goldhaber@wilsonelser.com

**Attorneys for American Medical Lab**
Richard R. Gordon, Esq.
Gordon Law Offices, Ltd.
111 W. Washington St., Suite 1240
Chicago, IL 60602

Tel: (312) 332-5200
rrg@gordonlawchicago.com

**Attorneys for Dr. Terrill Applewhite &**
**Five Apples Inpatient Specialists LLC**
John V. Smith II (IL Bar No. 6183711)
Matthew A. Reddy (IL Bar No. 6302815)
Alexander J. Beehler (IL Bar No. 6323624)
FORAN GLENNON PALANDECH PONZI
& RUDLOFF, PC
221 N. LaSalle St., Suite 1400
Chicago, Illinois 60601
Tel: (312) 863-5000
jsmith@fgppr.com
mreddy@fgppr.com
abeehler@fgppr.com

Judith S. Sherwin, Esq. (IL Bar No. 2585529)
ARONBERG GOLDGEHN DAVIS & GARMISA
330 N. Wabash Ave,
Chicago, IL 60611
Tel: (312) 755-3167
jsherwin@agdglaw.com

**Attorney on behalf of the United States**
Danielle Anne Phillip, Esq.
Assistant United States Attorney
219 South Dearborn Street
Chicago, IL 60604
(312) 886-2039
danielle.phillip@usdoj.gov

      /s/ *Matthew A. Reddy*
      John V. Smith II (IL Bar No. 6183711)
      Matthew A. Reddy (IL Bar No. 6302815)
      Alexander J. Beehler (IL Bar No. 6323624)
      FORAN GLENNON PALANDECH PONZI &
      RUDLOFF, PC
      221 N. LaSalle St., Suite 1400
      Chicago, Illinois 60601
      Tel: (312) 863-5000
      jsmith@fgppr.com
      mreddy@fgppr.com
      abeehler@fgppr.com